**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Shawna Dobrzelecki, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| v. | ) | |
| | ) | |
| Carrington Health Center, and | ) | |
| Jodi Hovdenes, | ) | Case No.: 1:25-cv-00066 |
| | ) | |
| Defendants. | ) | |

On July 2, 2026, Plaintiff Shawna Dobrzelecki ("Plaintiff") filed a *Motion to Compel Discovery from Defendant Carrington Health Center*. (Doc. No. 27). Plaintiff seeks an order compelling Defendants Carrington Health Center and Jodi Hovdenes (collectively "Defendants") to produce final contracts issued to her similarly-situated colleagues for 2024, and the 2024 and 2025 payroll records for her colleagues, along with an explanation of any codes in the payroll records. Defendants filed a response in opposition to Plaintiff's request on July 16, 2026, and Plaintiff filed a reply on July 23, 2026. (Doc. Nos. 30, 31).

## I.   BACKGROUND

The following facts are taken from the parties' motions, pleadings, and supporting documents. The facts are assumed true for the purposes of this order.

On March 18, 2025, Plaintiff filed a Complaint against Defendants in this district alleging violations of the Family Medical Leave Act ("FMLA"), the Americans with Disabilities Act ("ADA"), and North Dakota state law. (Doc. No. 1 at 1).

Plaintiff began employment with Defendants in April 2022, and on September 20, 2023, informed Defendant Jodi Hovdenes ("Hovdenes"), the President and Chief Executive Officer of Defendant Carrington Health Center ("Carrington"), that she needed leave under the FMLA. (*Id.*

at 1-2). Hovdenes responded to the request with concerns about whether such leave could be accommodated. (*Id.* at 2). Approximately two days later, Hovdenes informed Plaintiff that she was concerned with the timing of the request as it may not work best for the ER/Hospitalist schedule, and suggested Plaintiff modify her request and need for medical treatment to accommodate the hospital's schedule. (*Id.*).

Plaintiff was unable to modify her medical treatment, and shortly thereafter, Hovdenes again expressed her concerns about FMLA leave. (*Id.*). Carrington eventually granted FMLA leave, with leave of absence set to expire on February 2, 2024. (*Id.* at 3).

On November 22, 2023, Hovdenes asked Plaintiff to confirm her intent to return to work, as she wanted to know whether she needed to fill Plaintiff's shifts or to terminate her employment. (*Id.*). On December 13, 2023, Plaintiff informed Hovdenes of her intent to return to work, and that her recovery time was taking longer than anticipated. (*Id.*). Plaintiff further advised that she may require accommodation to her work schedule upon her return to aid in a successful recovery. (*Id.*).

On January 2, 2024, Carrington terminated Plaintiff's employment without notice or reason. (*Id.*). Plaintiff filed a charge of discrimination with the EEOC on August 2, 2024, and received the right to sue letter on January 27, 2025. (*Id.*).

Violations of rights under the FMLA and ADA may include damages in the form of front and back pay. (Doc. No. 27 at 2). The FMLA provides a presumption of liquidated damages. (*Id.*).

Since the filing of the Complaint in 2025, the parties have engaged in the exchange of discovery. (*Id.*). Because Plaintiff seeks front and back pay, she requested through discovery any information regarding the terms and conditions of similarly situated colleagues after her termination. (*Id.* at 2-3). This request included all documents referring to or relating to the terms and conditions of her similarly situated colleagues, employment contracts from January 2022

through April 2024, and documents reflecting the implementation of the 2024 and 2025 fiscal year compensation plans, to include payroll updates. (*Id.* at 3). Defendants responded to written discovery and produced documents on December 12, 2025, and supplemented their document production on December 29, 2025. (Doc. No. 30 at 2).

Sometime later, Plaintiff requested attachments listed in a correspondence addressing draft contracts prepared for her colleagues which included the terms and conditions of employment from January 1, 2024, and beyond. (Doc. No. 27 at 3-4). Defendants informed Plaintiff that they were in the process of supplementing the information and subsequently produced the draft 2024 contracts that were subject to the already disclosed correspondence. (Doc. No. 30 at 2).

Following an unsuccessful settlement conference, on May 15, 2026, Plaintiff requested Defendant provide further information responsive to the discovery requests to assist the parties in narrowing back pay computation disputes and potentially further settlement discussions. (Doc. No. 27 at 4). This May 15, 2026, request included the production of the final contracts issued to Plaintiff's similarly situated colleagues for 2024, compensation summaries prepared regarding the 2024 contracts, documents reviewed with the similarly situated colleagues when implementing the 2024 contracts, and the 2024 and 2025 payroll records for Plaintiff's similarly-situated colleagues. (*Id.* at 4-5).

## II.    LEGAL STANDARD

Federal Rules of Civil Procedure 37 authorizes motions to compel discovery. Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of discovery.

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense

3

of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "The scope of discovery under Rule 26(b) is extremely broad." *Gowan v. Mid Century Ins. Co.,* 309 F.R.D. 503, 508 (D.S.D. 2015) (citing 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure §§ 2007, 3637 (1970)). "Discovery information itself need not be admissible at trial; rather, the defining question is whether it is within the scope of discovery." *Colonial Funding Network, Inc. v. Genuine Builders, Inc.*, 326 F.R.D. 206, 211 (citing Fed. R. Civ. P. 26(b)(1)). After a threshold showing of relevance by the proponent of discovery, the burden shifts to the party opposing the motion to compel to show how each discovery request is improper, through specific explanations or factual support. *Jo Ann Howard & Assocs., P.C. v. Cassity*, 303 F.R.D. 539, 542 (E.D. Mo. 2014) (citing *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1993); *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511-12 (N.D. Iowa 2000)). "The party must demonstrate to the court 'that the requested documents either do not come within the broad scope of relevance defined pursuant to Rule 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.'" *Jo Ann Howard & Assocs., P.C.*, 303 F.R.D. at 542 (quoting *Burke v. New York City Police Dep't.*, 115 F.R.D. 220, 224 (S.D.N.Y. 1987)).

## III.   DISCUSSION

This court has previously addressed arguments raised as to the timeliness of discovery disputes after the discovery deadline has lapsed. *See generally Helmick v. BNSF Ry. Co.*, No. 1:23-CV-00040, 2024 WL 3103428 (D.N.D. June 24, 2024).  In so doing, this court has determined that pursuant to Federal Rules of Civil Procedure 16(b), a court is permitted to modify a scheduling order for good cause. Fed. R. Civ. P. 16(b)(4). To show good cause, a movant must show diligence in attempting to meet deadlines. *FastTrac Transportation, LLC v. Pedigree Technologies, LLC*,

No. 3:22-CV-52, 2023 WL 3226185, ay *6 (D.N.D. Mar. 7, 2023); *see also Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716-17 (8th Cir. 2008). "Where there has been 'no change in the law, no newly discovered facts, or any changed circumstances… after the scheduling deadline for amending pleadings,' then we may conclude that the moving party has failed to show good cause." *FastTrac Transportation, LLC*, No. 3:22-CV-52, 2023 WL 3226185, at *6 (quoting *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012)).

While discovery closed on March 27, 2026, and discovery motions were due on March 13, 2026, the court is inclined to find that there is good cause for modification of the scheduling order. The court agrees with Defendants that there is an approximately six-month delay between Plaintiff obtaining the relevant responses and in the raising of the discovery dispute, but the court must also take the proceedings as a whole into account. Of note, discovery was due on March 27, 2026, and discovery motions were due March 13, 2026. (*See* Doc. No. 17). The parties participated in a settlement conference on May 8, 2026. (Doc. No. 22). Upon the settlement conference's failure, on May 15, 2026, Plaintiff raised the current dispute with Defendants, after both the discovery and discovery motion deadlines had lapsed.

Upon unsuccessfully conferring in good faith about the instant dispute, the parties participated in a status conference with the court as required by this district's local rules. (*See* Doc. No. 26); D.N.D. Civ. L.R. 37.1. At the conference's conclusion, the court authorized Plaintiff to file her motion to compel. (Doc. No. 26).

It is this court's view that there is good cause to modify the scheduling order to permit Plaintiff's untimely motion to compel. It is apparent that the parties were attempting to engage in settlement discussions and when those discussions failed, Plaintiff's focus returned to discovery and resolving any discovery disputes. The court must also consider its own actions in deciding this

matter. At the conclusion of the June 15, 2026, status conference, Plaintiff was authorized to file the instant motion. (Doc. No. 26). If the court were to have determined there was not good cause to warrant the filing of the motion, it is likely the court would have said so at that time rather than permitting the parties to engage in fruitless motion practice.

Although understanding of Defendants' frustration with Plaintiff's instant request and failure to seek such information sooner, frankly, the court is puzzled as to why the information was not initially disclosed by Defendants in the first place. Upon inquiry from Plaintiff, not only did Defendants produce to Plaintiff the 2024 draft contracts, which were attachments to a produced email, but were not initially included, even though it appears that Plaintiff's Request for Production of Documents No. 17 specifically requested employment contracts.  It is perplexing as to why Defendants had no issue producing the draft contracts, but opposed Request No. 17, which concerned in part the production of the final contracts issued to the third-party colleagues working in the same position as Plaintiff in the ER/Hospitalist position. (*See* Doc. No. 27 at 11).

Also of interest to this court is the allegation that Plaintiff has based her demand for front and back wages on contracts provided during discovery,[1] which identified that other individuals within her job classification would receive "on-call" pay and "call-back" pay, to begin January 1, 2024, and Plaintiff was terminated on January 2, 2024. Plaintiff further argues that the produced documents show that if she were not terminated, she would have received the same contract as her similarly-situated colleagues, with the same terms and conditions, albeit with a potentially different salary. (Doc. No. 27 at 9).  It would be a disservice for the court not to mention that the position at issue, an ER/Hospitalist position, and the disputed "on-call" and "call-back" pay, were both a new position and new benefits. Meaning that without the final 2024 contracts or any payroll

---

[1] The court presumes Plaintiff is referring to the produced draft contracts.

information, it is not clear how Plaintiff would be able to calculate any potential damages, especially as related to potential front and back pay as a newly added benefit.

Plaintiff requests the court further require Defendants to produce the 2024 and 2025 payroll records for her colleagues, along with explanations of any codes in the records to address how the "on-call" and "call-back" provisions were implemented. Though not explicitly stated, the court presumes for purposes of this order that Plaintiff is specifically seeking the 2024 and 2025 payroll information as to her similarly-situated colleagues, which she asserts consists of three individuals, as opposed to every employee working at the Carrington Health Center during and after her term of employment.

Like Plaintiff's request for the final contracts, here too it appears that in Request for Production of Documents No. 19 she requested production of all documents and communications pertaining to implementation of the 2024 and 2025 fiscal year compensation plans, to include timelines, payroll updates, and confirmation of retroactive pay application. (Doc. No. 27 at 12). In their objection to this request and without waiving objection, Defendants agreed to produce a copy of the FY24 Upper Midwest Division APP Compensation Plan and relevant, non-privileged communications regarding the application of the plan to Plaintiff's employment with Carrington Health Center. (*Id.*). Moreover, in their response, Defendants argued that at no time did Plaintiff request the 2024 and 2025 payroll records for third parties, nor can anything in the Requests for Production be construed as a request for or to require the production of the payroll records or supplemental explanation of the records. (Doc. No. 30 at 7).

As previously noted, this court interprets Request for Production of Documents No. 19 as a request for the 2024 and 2025 fiscal year compensation plans. Specifically, the request asks for the plans of employees under Hovdenes' supervision, which can be construed to mean any of the

7

ER/Hospitalists employed by Carrington Health Center and supervised by Hovdenes. The request also specifically asks that timelines, payroll updates, and confirmation of retroactive pay application be disclosed. Defendant is correct that the requests do not explicitly seek any explanation of codes, but many individuals would be hard pressed to successfully interpret payroll without at least a basic comprehension of the different codes and their meanings.

Defendants have previously disclosed the 2024 fiscal year plan, as relevant to Plaintiff. The information about the similarly-situated individuals is also relevant, especially as to the application of the pay provisions considering the new benefits and that the position was newly created. Defendants shall produce both the 2024 and 2025 plans, along with any explanation of codes. To the extent the payroll information may include private personal information, it may be provided pursuant to the parties' protective order. Defendants may redact any information that does not pertain to Plaintiff and the three similarly-situated individuals.

As part of their opposition, Defendants claim that any order compelling the production of documents after the close of discovery is burdensome and prejudicial. (Doc. No. 30 at 6). Specifically, Defendants argue they were led to believe that there were no outstanding discovery discrepancies or disputes, they have already moved for summary judgment and this dispute has and continues to divert resources away from litigating the merits of Plaintiff's claims and further disagrees with Plaintiff's contention that production of the requested documents will advance settlement discussions, especially as Defendants have filed their motion for summary judgment. (*Id.*).

Again, the court is sympathetic to Defendants' argument. However, there is no indication that it would be unduly burdensome for them to produce the requested documents, or that their summary judgment motion would be detrimentally impacted by such disclosure. This court must

8

consider any future proceedings in this matter, especially as to any upcoming trial. There is never a guarantee that any summary judgment motion will or will not be granted, whether in part or in its entirety, and in this case, it makes no procedural sense for the court to skim past the potential relevancy of these documents to damages calculations or to any future proceedings.

Finally, the court reiterates that just because information may be discoverable does not mean it will be admissible at trial.

## IV.    CONCLUSION

For the reasons above, the court **GRANTS** Plaintiff's *Motion to Compel Discovery from Defendant Carrington Health*. (Doc. No. 27). Defendants shall provide the requested documents to Plaintiff within seven (7) days of this Order.

**IT IS SO ORDERED.**

Dated this 12th day of August, 2026.

*/s/ Clare R. Hochhalter*
Clare R. Hochhalter, Magistrate Judge
United States District Court

9